IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Atkins Machinery, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 2:05-1633-23 |
| v. | ) | |
| | ) | **ORDER** |
| C.H. Powell Company, Inc., and | ) | |
| SSA Cooper, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court upon Defendant SSA Cooper, LLC's ("Cooper") motion for partial summary judgment. For the reasons set forth herein, the court denies Defendant Cooper's motion.

**BACKGROUND**

Plaintiff Atkins Machinery, Inc. ("Atkins") is a corporation organized and existing under the laws of South Carolina with its principal place of business in Spartanburg, South Carolina. Atkins is in the business of purchasing, refurbishing, and reselling used textile machinery. Defendant C.H. Powell Company, Inc. ("Powell") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Westwood, Massachusetts. Powell is a licensed freight forwarder engaged in the business of arranging for the inland and ocean transport of cargo.[1] Defendant Cooper is an entity organized and existing under the laws of Delaware with its principal place of business in Seattle, Washington, and a branch office in Charleston, South Carolina. Cooper is a wholly owned subsidiary of SSA Marine, Inc.; Cooper routinely contracts business by providing stevedoring services in the port of Charleston, South Carolina.

---

[1] On August 1, 2006, this court filed an Order of Dismissal as to Defendant Powell.

On May 9, 2005 Plaintiff filed the present action in the Court of Common Pleas for Charleston County. Defendants removed the action to this court in June of 2005, asserting diversity jurisdiction, admiralty and maritime jurisdiction, and federal question jurisdiction. Specifically, this case involves the transport of a Schlafhorst SE-9 open end spinning frame ("textile machine") from Plaintiff's facility in Landis, North Carolina, to Indo-Thai Synthetics in Bangkok, Thailand.

In August of 2004, Plaintiff hired Powell to make arrangements for the transportation of the textile machine. Powell first arranged for International Bridge Transport to transport the machine from Plaintiff's facility to the Wando Terminal at the Port of Charleston. Plaintiff asserts that the textile machine was received in good condition by International Bridge Transport at Plaintiff's facility on August 9, 2004, and that it then was delivered to the Wando Terminal, Port of Charleston, in good condition. Second, Powell engaged D.M. Consol-Line to charter space aboard an American President Lines ("APL") vessel, the M/V APL AMAZONITE. In turn, APL hired Defendant Cooper to perform stevedore services. Thus, when the textile machine was delivered to the Port of Charleston, in good condition, it was placed in the custody of Defendant Cooper.

According to Plaintiff, on August 13, 2004, while in the custody of Cooper and while attempting to load the container in preparation for transport aboard the APL AMAZONITE, employees of Cooper neglected to secure a container that contained various parts comprising approximately one-half of the textile machine. Because the container was not secured, the container tipped and fell on its side as the driver, who was attempting to move the container to the vessel, rounded a corner. Plaintiff asserts that Defendant Cooper then righted the container, without first inspecting the interior, thereby causing further and more extensive damage to the textile machine. The damaged container was not shipped to Thailand; however, Cooper loaded the remaining

2

containers, included the container that contained the other half of the textile machine, and shipped them to Thailand pursuant to D.M. Consol-Line Bill of Lading no. 0040217116.  Plaintiff asserts that the damage to the container tipped by Cooper rendered the other half of the textile machine unusable, and therefore, the textile machine was a constructive total loss.   Based on the aforementioned facts, Plaintiff has asserted causes of action for breach of bailment and gross negligence or recklessness against Defendant Cooper.[2]

On May 24, 2006, Defendant Cooper filed a motion for partial summary judgment on the grounds that its liability is limited to the $500.00 package limit contained in APL's standard long-form bill of lading.  Cooper states that although Atkins "utilized DM Consol-Line as its contract carrier for its shipment on August 13, 2004, the owner and operator of the vessel, APL, hired [Cooper] to load the vessel." (Mot. at 1.)  Plaintiff filed a memorandum in opposition to Defendant Cooper's motion, arguing first that the D.M. Consol-Line bill of lading applies, not the APL bill of lading.  Second, Plaintiff argues that even if the APL bill of lading applies, there is a genuine issue of material fact regarding the limitation amount.  Defendant Cooper filed a reply to Plaintiff's memorandum, reasserting its position and arguing that there is no genuine issue of material fact regarding the limitation amount.

## **STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

---

[2]  Plaintiff's complaint alleges causes of action against Powell for breach of bailment and breach of contract; however, as previously mentioned, this court filed an Order of Dismissal as to Defendant Powell on  August 1, 2006.

(1986).  All evidence should be viewed in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'"  *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases."  *Celotex*, 477 U.S. at 327.

## ANALYSIS

In the matter *sub judice*, the damaged container was never loaded onto the APL AMAZONITE, and therefore, no bill of lading was ever issued with respect to this container.[3]  The issue before the court, therefore, concerns whether the liability limitations in either the D.M. Consol-Line bill of lading or the APL bill of lading extend to Defendant Cooper.

As an initial matter, section 2.2 of the D.M. Consol-Line bill of lading provides that, "the Carrier shall be responsible for the acts and omissions of any person of whose services he makes use

---

[3]  As previously mentioned in the "background" section of this Order, Defendant Cooper loaded the remaining undamaged containers onto the APL vessel, and these containers were shipped to Thailand under D.M. Consol-Line Bill of Lading no. 0040217116.

for the performance of the contract evidence[d] by this Bill of Lading." (Pl.'s Response, Ex. C.) Pursuant to section 11.1, commonly referred to as a "Himalaya" clause,[4] if an action is brought against anyone referred to in section 2.2 of the bill of lading, "such person shall be entitled to avail himself of the defences and limits of liability which the carrier is entitled to invoke . . . ." (Pl.'s Repsonse, Ex. C.) However, section 11.2 provides that "if it is proved that the loss or damage resulted from an act or omission of this person, done with intent to cause damage or recklessly and with knowledge that damage would probably result, such person shall not be entitled to benefit of limitation of liability provided in paragraph 3 of Clause 8." (Pl.'s Response, Ex. C.) Paragraph 3 of clause 8 states that "[c]ompensation shall not, however, exceed 2 SDR (Special Drawing Rights) per kilo of gross weight of the goods lost or damaged . . . ."[5] (Pl.'s Response, Ex. C.) According to Plaintiff, this is a common limitation based on the Hague-Visby Rules, which apply in many countries but have not been codified in the United States. (Pl.'s Response at 2.)

On the other hand, the APL standard long-form bill of lading specifically defines "subcontractor" to include stevedores. (Def.'s Mot., Ex. 5.) Additionally, in its definition of "subcontracting," the APL bill of lading states that every subcontractor "shall have the benefit of every right, defense, limitation and liberty of whatsoever nature herein contained or otherwise available to the carrier as if such provisions were expressly for its benefit; . . . ." (Def.'s Mot., Ex. 5.) Most importantly, the APL bill of lading includes a paramount clause, which states that:

---

[4] A "Himalaya" clause extends liability limitations to downstream parties. *See Norfolk S. R.R. Co. v. Kirby*, 543 U.S. 14, 14 (2004).

[5] Plaintiff has calculated the value of the limitation of liability pursuant to section 3.8 of the D.M. Consol-Line bill of lading as $49,180.99 for the damaged container, which weighed 16,800 kilos. (Pl.'s Response at 3.)

> Prior to loading onto the Vessel . . . , the Carrier's liability shall be governed under the Hague Rules, except that the limitation shall be U.S. $500.00 per package or per shipping unit . . . , and for this purpose, the Hague Rules shall be extended to the periods before loading and subsequent to discharge and to the entire portion of the Carrier's responsibility.

(Def.'s Mot., Ex. 5.)

In its motion for summary judgment, Defendant Cooper argues that the APL bill of lading is imputable to Plaintiff Atkins pursuant to *Caterpillar Overseas, S.A. v. Marine Transport Inc.*, 900 F.2d 714 (4th Cir. 1990). Cooper also argues that it is an intended beneficiary of the limitation of liability provision in the APL long-form bill of lading pursuant to *Norfolk S. R.R. Co. v. Kirby*, 543 U.S. 14 (2004). Before evaluating the merits of Cooper's position, the court outlines the two primary cases relied upon by Cooper.

## I.      *Caterpillar Overseas, S.A. v. Marine Transport Inc.*

In *Caterpillar*, the plaintiff had arranged Lusk Shipping Company ("Lusk") to act as its agent and freight forwarder in handling the shipment of a tractor from Portsmouth, Virginia, to Zaire. 900 F.2d at 716. Lusk, in turn, agreed with Farrell Lines, Inc. ("Farrell") to ship the tractor to Zaire on one of Farrell's vessels. *Id.* However, when the particular vessel arrived at Portsmouth, it was withdrawn from service and put in dry dock. *Id.* at 717. Thus, Farrell agreed that the tractor should be transferred from the Portsmouth port to the Norfolk port, where another Farrell vessel was available to transport the tractor. *Id.* Under the parties' agreement, Farrell bore the responsibility to arrange the transfer between the ports, and therefore, Farrell hired Marine Transport, an independent trucker, to transfer the tractor using a flatbed trailer. *Id.* Unfortunately, in making the transfer, the tractor slid off the trailer while rounding a curve and smashed into a guard rail, causing severe damage to the tractor. *Id.* Due to this incident, Caterpillar filed suit against: the operator of

the terminal; Farrell (the carrier); and Marine Transport (the trucker employed by Farrell.)  *Id*. Farrell argued that its liability was limited to $500.00 under the provisions of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1304(5).  Likewise, Marine Transport argued that under the "Himalaya" clause in the bill of lading, its liability was similarly restricted to $500.00 by COGSA.  *Id*.

Ultimately, the court determined that Farrell was protected by COGSA.  *Id*. at 718.  "In reaching this conclusion, [the court] recognized that no bill of lading had been issued 'at the time of the accident, and in fact was never issued.'"  *Id*.  Nevertheless, the court found that:

> the plaintiff through its freight forwarder, 'had previously shipped goods by Farrell' on many occasions, and that the parties intended the contract of carriage to be that provided in Farrell's standard bill of lading, copies of which were in Lusk's custody. As a matter of fact, Lusk had prepared a bill of lading on the Farrell form covering this transaction, intending to deliver it at the time the tractor was on board ship.  In short, the district judge found that it was the intention of both parties that the contract of carriage herein would be that stated in Farrell's form bill of lading.  Under these circumstances, the district court judge found that the knowledge by Lusk of Farrell's bill of lading and the intention of both parties that the transportation was to be controlled by the bill of lading was such that knowledge of acceptance of the terms of such bill of lading could fairly be imputed as the contract of carriage. . . .  He accordingly concluded that "it did not seem unduly burdensome to impute the shipper's knowledge of all of the terms in the . . . bill of lading, including . . . the applicable provisions of COGSA," citing *Cincinnati Milacron, Ltd. v. M/V American Legend*, 784 F.2d [1161], 1166, [(4th Cir. 1986)], adopted by the *en banc* court in 804 F.2d 837 as the opinion of the court on this point.[6]

*Id*.  Thus, the court agreed with Farrell that its liability was limited to $500.00 under COGSA; in adopting the district court's ruling, the Fourth Circuit stated, "the terms of the longform, though not delivered or formally executed, were known, and both parties understood and intended those terms to apply."  *Id*. at 720.

---

[6] In *Cincinnati Milacron*, the court imputed knowledge of the terms of a long-form bill of lading even though the long-form bill of lading was not used.

In contrast, with respect to Marine Transport, the district court determined that it was not protected by the "Himalaya" clause in the presumed bill of lading and that it was liable for the full loss, less the $500.00 contributed by Farrell. *Id*. at 718. The district court offered two reasons in support of its determination. First, the district court determined that the presumed bill of lading restricted the liability limitation to accidents occurring at the time the goods were "in the custody of the carrier." *Id*. at 726. Because the court concluded that the goods were in the in the custody of Marine Transport at the time of the accident, the court determined that the "Himalaya" clause was, by its terms, not applicable. *Id*. Second, the district court determined that the term "independent contractor" does not clearly identify one in Marine Transport's situation as a beneficiary of the "Himalaya" clause. *Id*. The Fourth Circuit again adopted the district court's ruling and stated:

> It cannot be argued that the trucker Marine was pursuing a maritime service in hauling the tractor a score of miles over a federal highway. . . . Marine had both the custody and responsibility for the safety of the tractor while it was transporting it over a section of federal-state highway chosen by it and being operated by a driver hired and controlled by it. This is a far different situation than that of the stevedore whose services are rendered in the terminal facilities while engaged in actually loading directly the cargo on the ship. Stevedoring is essentially a maritime trade. Transporting cargo down a group of public highways for a stretch of miles, on the contrary, is not a normal maritime operation. We think the district judge correctly decided that Marine was not entitled to the limitation of liability given by COGSA.

*Id*. at 726.

## II.    *Norfolk S. R.R. Co. v. Kirby*

In *Kirby*, an Australian manufacturer (Kirby) hired International Cargo Control (ICC) to arrange for delivery of machinery from Australia to Huntsville, Alabama. 543 U.S. 14. ICC issued a bill of lading to Kirby designating Savannah, Georgia, as the discharge port and Huntsville as the ultimate destination. *Id*. at 18. The bill of lading set ICC's liability limitation lower than the cargo's

8

true value, using COGSA's default liability rule of $500 per package. The bill of lading also contained a "Himalaya" clause that extended the liability limitations to "any servant, agent or other person (including any independent contractor) whose services have been used in order to perform the contract." *Id.* at 29. When ICC hired a German shipping company to transport the containers, the German company issued its own bill of lading to ICC; this bill of lading also adopted COGSA's default rule and included a "Himalaya" clause that extended the liability limitation to "all agents . . . (including inland) carriers . . . and all independent contractors." *Id.* at 21. The German contractor hired Norfolk Southern Railway ("Norfolk") to transport the machinery from Savannah to Huntsville; however, while en route to Huntsville, the train derailed, causing an alleged $1.5 million in damages. *Id.* Kirby and its insurer filed suit against Norfolk seeking recovery for the damages.

Ultimately, the issue before the United States Supreme Court was whether Norfolk could take shelter in the liability limitations of either the ICC bill of lading or the German company's bill of lading. *Id.* at 22. In addressing this issue, the Supreme Court first determined that Norfolk could take shelter in the ICC bill of lading, stating:

> Kirby and ICC contracted for the transportation of machinery from Australia to Huntsville, Alabama, and, as the crow flies, Huntsville is some 366 miles inland from the port of discharge. Thus, the parties must have anticipated that a land carrier's services would be necessary for the contract's performance. It is clear to us that a railroad like Norfolk was an intended beneficiary of the ICC bill's broadly written Himalaya clause.

*Id.* at 32.

Next, the Supreme Court addressed whether Norfolk could take shelter in the German company's bill of lading.[7] To interpret the German company's bill, the Supreme Court referenced

---

[7] As the Supreme Court explained in *Kirby*, because Norfolk's liability would be lower if it was protected by the German company's bill, the court needed to reach this second question to

a rule[8] about common carriage: "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Id.* at 33. The court stated: "[i]n holding that an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers, we do not infringe on traditional agency principles. We merely ensure the reliability of downstream contracts for liability limitations." *Id.* at 33. Thus, the court held that Norfolk was entitled to the protection of the liability limitations in both the ICC bill of lading and the German company's bill of lading. *Id.* at 36.

## III.    The Merits of Defendant Cooper's Position

In its motion for summary judgment, Defendant Cooper argues that pursuant to the Fourth Circuit's holding in *Caterpillar*, 900 F.2d 714, the APL long-form bill of lading is imputable to Atkins. Next, Defendant Cooper argues that pursuant to *Kirby*, 543 U.S. 14, it is entitled to the protection of the liability limitation included in the APL long-form bill of lading, which would limit its liability to $500.00 per package or per shipping unit because Atkins, as a matter of longstanding practice, never declared a higher value on its bills of lading.

---

give Norfolk the full relief for which it petitioned. *See* 543 U.S. at 32.

[8] The Supreme Court derived this rule from its decision in *Great N. R.R. Co. v. O'Connor*, 232 U.S. 508 (1914). In *O'Connor*, an owner hired a transfer company to arrange for the shipment of her goods. Without the owner's express authority, however, the transfer company arranged for rail transport at a tariff rate that limited the railroad's liability to less than the true value of the goods. The goods were lost en route, and therefore, the owner sued the railroad. The Supreme Court held that the railroad needed to be able to rely on the liability limitation in its tariff agreement with the transfer company because the railroad had the right to assume that the transfer company could agree upon the terms of the shipment, and the railroad could not be expected to know if the transfer company had any outstanding, conflicting obligation to another party. *See Kirby*, 543 U.S. at 33 (citing *O'Connor*, 232 U.S. at 514).

10

In response to Cooper's arguments, Plaintiff Atkins asserts that the only bill of lading imputable to Defendant Cooper is the D.M. Consol-Line bill of lading. Plaintiff states: "While Atkins does not contest the rules espoused by [*Caterpillar* or *Kirby*], it is clear from an examination of the facts that the application of *Kirby* and *Caterpillar* to this case does not require the application of the APL bill of lading, does not resolve issues of fact, and does not lead to the conclusion argued by SSA." (Pl.'s Response at 4.) Based on the record currently before the court, the court is inclined to agree with Plaintiff.

First, the court finds Cooper's argument that the APL bill of lading is imputable to Atkins pursuant to *Caterpillar* flawed because Cooper has not made the requisite showing that the parties intended "that the contract of carriage herein would be that stated in [APL]'s form bill of lading." *See* 900 F.2d at 718. Stated simply, it is clear from a reading of *Caterpillar* that the parties' intent is a highly relevant factor for the court to consider in determining whether to impute knowledge of the terms of a bill of lading. *Id.* In *Caterpillar*, the court stated:

> In short, the district judge found that *it was the intention of both parties that the contract of carriage herein would be that stated in Farrell's form bill of lading.* Under these circumstances, the district court judge found that the knowledge by Lusk of Farrell's bill of lading *and the intention of both parties that the transportation was to be controlled by the bill of lading* was such that knowledge of acceptance of the terms of such bill of lading could fairly be imputed as the contract of carriage. . . .

*Id.* (emphasis added). In affirming the district court's ruling, the Fourth Circuit stated, "the terms of the longform, though not delivered or formally executed, were known, and *both parties understood and intended those terms to apply*." *Id.* at 720 (emphasis added).

Here, Defendant Cooper points out that Atkins had used APL as its carrier numerous times in the past, just as the plaintiff in *Caterpillar* had previously shipped goods through Farrell. However, Defendant Cooper admits that Atkins did not use APL as its carrier with respect to this

11

transaction.  (Def.'s Mot. at 6.)  More importantly, Defendant Cooper does not offer any evidence

to show that it was the parties' intention that the transportation was to be controlled by the APL bill

of lading and not another bill of lading, such as the D.M. Consol-Line bill of lading.[9]  In fact,

Defendant Cooper does not even *allege* that the parties intended for the APL bill of lading to

control.[10]  Thus, Defendant Cooper essentially asks this court to overlook both the district court and

the Fourth Circuit's reliance on the parties' intent in *Caterpillar*.  This court is unwilling to do so,

and therefore, based on the current record, the court declines to impute the terms of APL's bill of

lading without evidence that the parties intended for the terms of APL's long-form bill of lading to

apply.  *See Caterpillar*, 900 F.2d at 718-20.

　　Similarly, the court finds Defendant Cooper's reliance on *Kirby* flawed because Cooper has

failed to make the requisite showing that D.M. Consol-Line, as an intermediary, negotiated any

liability limitations with APL.  *See Kirby*, 543 U.S. at 34.  In *Kirby*, the Supreme Court stated: "[i]n

holding that an intermediary binds a cargo owner to the liability limitations it negotiates with

downstream carriers, we do not infringe on traditional agency principles.  We merely ensure the

reliability of downstream contracts for liability limitations."  *Id*. at 33.  Thus, the court held that

"intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability

_____

[9] Cooper makes no showing that *any* of the parties (either Atkins, Powell, or D.M. Consol-Line) had an understanding with APL, whereby the parties' intent was for the APL bill of lading to control the transportation.  In fact, the undamaged containers, which Cooper loaded onto the APL AMAZONITE, were shipped pursuant to D.M. Consol-Line bill of lading no. 0040217116.

[10] For example, although Defendant Cooper attaches the affidavit of Dan Trice, a claims manager for Cooper, Trice states in his affidavit only that Cooper was hired by APL to load various cargo onto the APL AMAZONITE.  Trice states that it sent APL an invoice in the amount of $39,977.01, and that Cooper received full payment.  (Def.'s Mot., Ex. 2.)  Missing from this affidavit (and from Defendant's motion as a whole) is any indication as to whether the parties intended for the APL bill of lading to control the transportation.

limitations with carriers downstream." *Id*. at 34.

Here, Defendant Cooper asserts:

> Based on the holding of *Kirby*, Atkins Machinery is bound by the limitation of liability provisions of the APL bill of lading. This is so because SSA Cooper, LLC was hired by APL and APL would have been the downstream carrier employed by DM Consol-Line, for actual carriage of the subject container had it made it on board. This, combined with the imputed bill of lading rule of *Caterpillar* requires that SSA Cooper, LLC be granted partial summary judgment limiting its liability to $500.00.

(Def.'s Mot. at 8.) Conspicuously missing from Defendant's motion, however, is any proof that D.M. Consol-Line, as an intermediary, actually contracted with APL for any particular liability limitation. Rather, Defendant asks this court to assume that D.M. Consol-Line contracted with APL for the liability limitation contained in APL's standard long-form bill of lading (rather than for the liability limitation contained in D.M. Consol-Line's bill of lading or any other possible liability limitation). The court declines to make such an assumption. Thus, while the court recognizes and appreciates the purpose of the Supreme Court's holding in *Kirby* – to "ensure the reliability of downstream contracts for liability limitations" – the court finds Cooper's reliance on *Kirby* in the present case flawed because Cooper has offered no evidence to prove either that D.M. Consol-Line and APL negotiated for a liability limitation or actually contracted for a liability limitation. Without this evidence, the court declines to provide shelter for Defendant Cooper in APL's standard long-form limitation of liability.[11] Accordingly, the court finds that based on the current record, the only bill of lading attributable to Defendant Cooper is the D.M. Consol-Line bill of lading.

---

[11] As a practical matter, the court notes that should the parties discover and bring to the court's attention any evidence of the parties' intentions (consistent with *Caterpillar*) and/or negotiations between D.M. Consol-Line and APL (consistent with *Kirby*), the court may be inclined to reevaluate its determination.

13

## <u>CONCLUSION</u>

Therefore, it is **ORDERED**, for the foregoing reasons, that Defendant Cooper's motion for

partial summary judgment is hereby **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 5, 2006**